IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| David Farrell Sullivan, ) | |
| ) | Civil Action No. 6:04-23266-HFF-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| South Carolina Department of ) | |
| Corrections Director Jon Osmit; Tyger ) | |
| River Classification Managers Rabb ) | |
| and Lawter; Tyger River Mailroom ) | |
| Supervisor Ms. Maness; Associate ) | |
| Warden Lloyd; Associates Warden ) | |
| Counts; Major Brewton; Capt. ) | |
| Thompson; Lt. Shelton; Librarian ) | |
| Mary McCabe; Lt. Peak; Lt. Bailey; ) | |
| Warden, SCDC Kirkland R&E Center; ) | |
| SCDC Warden Richard Smith; and ) | |
| SMU Captain Alexander and Nurse ) | |
| Donna Smiley, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the court on the parties' motions for summary judgment.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff filed his complaint on December 30, 2004, alleging that the defendants violated his constitutional rights. He filed an amended complaint on January 6, 2005. The defendants filed their answers to the amended complaint on March 21, 2005. The plaintiff filed a motion for summary judgment on April 29, 2005. The defendants filed a motion for summary judgment on June 17, 2005. By order filed on June 22, 2005, pursuant

to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed a response in opposition to the defendants' motion on July 12, 2005.

        In addition, the plaintiff has filed the following motions:

(1)     motion for preliminary injunction, filed January 24, 2005;

(2)     motion for examination of "Martinez report" by an outside source, filed February 11, 2005;

(3)     motion to amend pleadings, filed February 11, 2005;

(4)     motion for limited admission, filed February 18, 2005;

(5)     motion to produce, filed February 25, 2005;

(6)     motion to compel, filed April 12, 2005;

(7)     motion for summary judgment, filed April 29, 2005; and

(8)     motion for reconsideration of order on motion to appoint counsel, filed July 26, 2005

**FACTUAL BACKGROUND**

The plaintiff is currently an inmate at Tyger River Correctional Institution. In his complaint, he alleges that, while housed at Kirkland Reception and Evaluation Center (KREC), he was triple bunked for 16 days; he had to share a shower with 30 inmates; he received no recreation time for the 22 days he was at KREC; and that he was denied access to the courts because he was denied library privileges while at KREC. The plaintiff also complains that he had to wait two hours to see his wife; that he could not mail his legal mail on January 28, 2003, because the post office had closed for the day; that one certified letter was opened causing him to be prejudiced in a previous lawsuit; and that he received a lateral job transfer without due process. The plaintiff complains that, once transferred to Tyger River Correctional Institution (TRCI), his cellmates smoked and that various defendants were deliberately indifferent to his exposure to the secondhand smoke. He also complains that the

defendant Donna Smalley showed deliberate indifference to the plaintiff's serious medical need, and that Nurse Smalley's indifference caused injury to the plaintiff. The plaintiff does not include specific allegations regarding how Nurse Smalley was deliberately indifferent, to what serious medical need he is referring or what injury resulted.

## **APPLICABLE LAW**

Rule 56(c) of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. V. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in her pleadings; rather, she must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiffs position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory

allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satelite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

## ANALYSIS

### *Exhaustion of Administrative Remedies*

The defendants argue that the plaintiff's claims should be dismissed based upon the plaintiff's alleged failure to exhaust his administrative remedies as required by Title 42, United States Code, Section 1997e.

The Prison Litigation Reform Act (PLRA) amended 42 U.S.C. §1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has held that this section requires an inmate challenging his conditions of confinement to exhaust all administrative remedies before filing an action in district court. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by §1997e(a) is now mandatory"). Accordingly, before any plaintiff may proceed with claims in this court, he or she must first exhaust their administrative remedies. *See Booth v. Churner*, 532 U.S. 731 (2001).

In *Al-Shabazz v. State*, 338 S.C. 354, 527 S.E.2d 742 (2000), the South Carolina Supreme Court outlined the administrative remedies available to a state prisoner for obtaining review of a final decision of the SCDC in a non-collateral or administrative matter. First, the inmate must file a grievance, whether he challenges a disciplinary outcome,

4

calculation of sentence-related credits, custody status, or other condition of imprisonment. *Id.* at 753 ("initiating a grievance is the method an inmate uses to challenge such decisions within the prison system"). The grievance procedure "give[s] an inmate a method to raise the matter to prison officials and create a reviewable record." *Id*. Furthermore, the court in *Al-Shabazz* specifically held that the SCDC's "disciplinary and grievance procedures are consistent with the standards delineated by the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539 (1974)." *Id.* at 752.

Once a final decision has been made by the SCDC, an inmate in certain cases may seek review by an Administrative Law Judge ("ALJ"), who "sits in an appellate capacity to review Department's decisions." *Id.* at 754. Thereafter, an inmate may seek judicial review of an ALJ's decision by filing a petition with the circuit court and a notice of appeal with the clerk of the ALJ division. *Id.* Such review is limited, however, to "errors or abuses allegedly committed by the ALJ." *Id.* at 755. An inmate may also obtain appellate review of any final judgment of the circuit court. *Id.* at 756.

In a case following *Al-Shabazz*, the South Carolina Supreme Court had occasion to again consider this issue in a different factual context. *Sullivan v. South Carolina Department of Corrections*, 355 S.C. 437, 586 S.E.2d 124 (2003). In *Sullivan*, the court reviewed a decision by the ALJD ruling that it had no jurisdiction in a dispute between an inmate and the South Carolina Department of Corrections over whether the inmate had a right to be enrolled in a treatment program. In denying the inmate's claim, the court found that the grievance was not a typical *Al-Shabazz* claim. The court stated:

> Under *Wolff, Sandin, Al-Shabazz,* and *Furtick*, to determine whether Sullivan is entitled to review of the SCDC's decision, the Court must decide whether Sullivan's request for access to [the treatment program] implicates a liberty interest sufficient to trigger procedural due process guarantees. The only way for the ALJ Division to obtain subject matter jurisdiction over Sullivan's claim is if it implicates a state-created liberty interest.

The defendants note that the plaintiff filed "Step Two" grievances with the Inmate Grievance Coordinator regarding a room change due to a smoking roommate, the opening of one piece of certified mail and his job transfer. However, he did not appeal any

5

of these grievances to the Administrative Law Judge Division. The plaintiff did not file grievances regarding any of his other allegations set forth in his complaint.

Because his complaint regarding the opening of certified mail and his job transfer are complaints involving a state-created liberty interest, the plaintiff has failed to exhaust his administrative remedies by not appealing his grievance to the ALJ. The only claim for which the plaintiff has exhausted his remedies is his alleged exposure to secondhand smoke or "environmental tobacco smoke" (ETS). For all other claims, it appears that the plaintiff did not exhaust his administrative remedies and that those claims should be dismissed on this ground.

### *Deliberate Indifference*

The plaintiff contends that he was subjected to secondhand smoke while incarcerated at TRCI and that the defendants were deliberately indifferent to his exposure to secondhand smoke.

In *Helling v. McKinney*, the Supreme Court held that a plaintiff "states a cause of action under the Eighth Amendment by alleging that . . . [the defendants] have, with deliberate indifference, exposed him to levels of . . . [environmental tobacco smoke] that pose an unreasonable risk of serious damage to his future health." 509 U.S. 25, 35 (1993). Determining whether environmental tobacco smoke conditions are sufficient to violate the Eighth Amendment requires an assessment of whether "society considers the risk . . . so grave that it violates contemporary standards of decency." *Id.* at 36. *Helling* establishes a constitutional right to be free from a level of environmental tobacco smoke so high that it poses an unreasonable risk of serious damage to future health. To prevail, a plaintiff must show that he has been exposed to such unreasonably high levels of smoke and that such exposure is contrary to current standards of decency and that today's society will not tolerate such exposure. *Id*. at 35-36. However, "Helling did not read the Eighth Amendment as mandating smoke-free prisons." *Scott v. District of Columbia*, 139 F.3d 940, 942 (D.C. Cir. 1998).

Under *Helling*, a plaintiff alleging exposure to secondhand smoke may state a cause of action under the Eighth Amendment by alleging and proving both that he has been exposed to unreasonably high levels of secondhand smoke, an objective element, and that the defendants were deliberately indifferent to the plaintiff's exposure to this risk, a subjective element. 509 U.S. at 35. Thus, in order to prove the objective element, the prisoner must show: (1) that he is being exposed to unreasonably high levels of secondhand tobacco smoke, and (2) that the exposure creates a risk of harm so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. *Id.* at 35-36. The plaintiff does not allege, much less offer evidence of, either of the objective elements. Furthermore, as to the subjective element, the affidavit of Associate Warden J.C. Counts of TRCI indicates that the plaintiff was originally assigned to Unit-2, in which all rooms are considered non-smoking unless all occupants agree that smoking is allowed. If any occupant does not agree with smoking in the cell, then smoking is not allowed; it is up to the non-smoking cellmate to notify Unit Security if this procedure is violated. When the plaintiff filed a grievance and requested a transfer to a non-smoking dorm on February 25, 2004, he was moved to Unit-6, a newly designated non-smoking dorm (Counts aff.¶¶ 5-6).

*Helling* involved a prisoner whose cellmate smoked five packs of cigarettes per day. 509 U.S. at 36. In determining that the prisoner had stated a valid cause of action under the Eighth Amendment, the Court impliedly found that exposure to such amounts of environmental tobacco smoke *could* be found to be unreasonably high. While a prisoner may have a clearly-established right to be free from unreasonably high levels of environmental tobacco smoke pursuant to *Helling*, the plaintiff here has not established that his exposure was unreasonably high. Moreover, the plaintiff here has made no showing that he was exposed to such high levels of smoke that they posed a serious risk of damage to his future health. In fact, the plaintiff has not alleged any injury at all other than the fact that he wanted to be moved to a nonsmoking unit and his request was not granted quickly enough. Based upon the foregoing, summary judgment should be granted to the defendants on the plaintiff's constitutional claim for exposure to secondhand smoke.

7

***"Persons" Under Section 1983***

The defendants also assert that their motion for summary judgment should be granted because they are not "persons" for §1983 purposes. *Lapides v. Bd. of Regents,* 535 U.S. 613, 617 (2002).

Title 42 U.S. C. §1983 allows a civil action to recover damages for deprivation of a constitutionally protected right. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). However, the Supreme Court has held that neither the State, nor a State official acting in an official capacity, are "persons" for purposes of actions under §1983. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989). The reasoning is that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . We hold that neither a State nor its officials acting in their official capacities are 'persons' under §1983." *Id; see also Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Accordingly, the plaintiff's claims must be dismissed against the defendants as State officials.

***Eleventh Amendment Immunity***

To the extent that the plaintiff is suing the defendants in their official capacities for money damages, there is no question that they are immune from suit under the Eleventh Amendment. The plaintiff has identified the defendants as state officials. Since an action against a government official in his official capacity is, in effect, an action against the governmental entity, a state official sued in his official capacity is entitled to Eleventh Amendment immunity. *See Will*, 491 U.S. at 71. The plaintiff's claims for damages against the defendants in their official capacities should be barred.

***Qualified Immunity***

The defendants have also raised the defense of qualified immunity. Qualified immunity protects government officials performing discretionary functions from suits for civil damages arising out of the exercise of their discretionary functions, provided that their

8

conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir. 1991) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)). The plaintiff's rights must be established so clearly that a "reasonable official would understand that what he is doing violates that right." *Slattery*, 939 F.2d at 216 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 97 L.Ed.2d 523, 107 S.Ct. 3034 (1987)). Accordingly, ruling on a defense of qualified immunity requires "(1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the [official's] position would have known that doing what he did would violate that right." *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992).[1]

In determining whether the specific right allegedly violated was clearly established, tolerance is accorded in the qualified immunity defense to "'good faith' mistakes of judgment traceable to unsettled law, or faulty information, or contextual exigencies. . . [which] is deliberately designed to give protection to 'all but the plainly incompetent or those who knowingly violate the law.'" *Pritchett*, 973 F.2d at 313 (citing *Malley v. Briggs*, 475 U.S. 335, 341, 89 L.Ed.2d 271, 106 S.Ct. 1092 (1986)).

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne,* 526 U.S. 286, 290 (1999); *see also Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before the qualified immunity

---

[1] In order to shield officials from both the burdens of litigation as well as liability, establishment of qualified immunity is encouraged at the summary judgment stage. *Pritchett*, 973 F.2d at 313 (citing *Harlow,* 457 U.S. 800, 815-819). However, summary judgment remains appropriate "only if (1) there are no genuine issues of material fact, and (2) on the undisputed facts the defendant as movant is entitled to judgment as matter of law." *Pritchett*, 973 F.2d at 313 (citations omitted). Thus, it is appropriate to consider the third element of a qualified immunity defense (i.e., whether a reasonable officer would have known that his conduct violated a specific right) only if there are no genuine issues of fact with respect to the official's conduct under the circumstances. If issues of fact do exist, summary judgment is inappropriate, and the issue must be reserved for trial. *Pritchett*, 973 F.2d at 313 (citing *Mitchell*, 472 U.S. at 526).

question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson,* 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott,* 156 F.3d 563, 567 (4th Cir. 1998); *see also Young v. City of Mount Rainier*, 238 F.3d 567, 577-78 (4th Cir. 2001) (where court concluded that the complaint did not allege a constitutional violation, there was no need to consider the question of qualified immunity).

In this case, as set forth above, the plaintiff has failed to demonstrate that the actions of the defendants violated any of his constitutional rights. Therefore, to the extent that the plaintiff is suing the defendants in their individual capacities, the defendants are entitled to qualified immunity on these claims.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, it is recommended that the defendants' motion for summary judgment be granted, and the plaintiff's motion for summary judgment be denied. All pending nondispositive motions are held in abeyance pending the district judge's disposition of the motion for summary judgment. Should the district judge adopt this court's recommendation, these motions will be rendered moot.

s/William M. Catoe
United States Magistrate Judge

August 4, 2005

Greenville, South Carolina